1  JENNIFER LEE TAYLOR (CA SBN 161368)
   JTaylor@mofo.com
2  JOYCE LIOU (CA SBN 277720)
   JLiou@mofo.com
3  SABRINA A. LARSON (CA SBN 291661)
   SLarson@mofo.com
4  MORRISON & FOERSTER LLP
   425 Market Street
5  San Francisco, California  94105-2482
   Telephone:  415.268.7000
6  Facsimile:   415.268.7522

7  Attorneys for Plaintiff
   NUTRITION & FITNESS, INC.

8

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11

12

13  NUTRITION & FITNESS, INC.,                   Case No. 8:20-cv-00151-JVS-KES

14                  Plaintiff,              **PLAINTIFF NUTRITION &
                                            FITNESS, INC.'S NOTICE OF
15      v.                                  MOTION AND MOTION FOR
                                            DEFAULT JUDGMENT AND
16  KING HARVEST CALIFORNIA,                PERMANENT INJUNCTION**

17                  Defendant.              Complaint Filed: January 24, 2020

18                                          The Honorable James V. Selna

19

20

21

22

23

24

25

26

27

28

1
2

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .......................................................................................... 1

II.     FACTUAL BACKGROUND........................................................................ 1

    A.    NFI and Its Trademarks........................................................................ 1

    B.    Defendant's Infringing Activity and Unfair Competition .................... 3

    C.    Defendant's Decision Not to Participate in This Lawsuit .................... 5

III.    JURISDICTION .......................................................................................... 5

IV.     LEGAL STANDARD................................................................................... 6

V.      ARGUMENT................................................................................................ 7

    A.    NFI Is Entitled to Default Judgment Under Federal
        Rule 55(b)(2) ........................................................................................ 7

        1. NFI Will Be Prejudiced If Default Judgment Is Denied ................ 7

        2. The Sufficiency of the Complaint and the Merits of NFI's
           Claims Support Default Judgment ................................................ 8

           a. NFI Has Prior, Valid Protectable Rights in the BLUE-
              EMU Mark ............................................................................ 9

           b. The *Sleekcraft* Factors Demonstrate a Likelihood of
              Confusion from Defendant's Use of the BLUE EMU
              Mark ................................................................................... 10

              (i) NFI's BLUE-EMU Mark and Defendant's BLUE EMU
                 Mark Are Nearly Identical .......................................... 10

              (ii) NFI's and Defendant's Goods Are Competing........................ 11

              (iii)    NFI and Defendant Use the Same Marketing Channels ..... 11

              (iv)    NFI's BLUE-EMU Mark Is Strong .................................... 12

              (v) Defendant Willfully Infringed the BLUE-EMU Mark ............ 13

              (vi)    Purchaser Care Will Not Avert Confusion........................... 13

              (vii)   Likelihood of Expansion Favors a Finding of Likely
                 Confusion .................................................................. 14

            3. The Sum of Money at Stake Supports a Default Judgment .......... 14

            4. There Is No Real Dispute as to Any Material Facts in the
              Case ............................................................................................. 15

i

**TABLE OF CONTENTS**
**(continued)**

Page

     5. The Default Did Not Result from Excusable Neglect ................... 15

     6. The Strong Public Policy Favoring Decisions on the Merits Is Outweighed by the Impossibility of Such a Decision in this Case ......................................................................................... 16

  B. NFI Is Entitled to Injunctive Relief ..................................................... 16

     1. NFI Has Suffered and Will Continue to Suffer Irreparable Harm Without Injunctive Relief ...................................................... 17

     2. The Balance of Hardships Weighs Decidedly in NFI's Favor ...... 18

     3. An Injunction Serves the Public Interest ........................................ 19

  C. NFI Is Entitled to Attorneys' Fees and Costs ...................................... 20

VI. CONCLUSION ............................................................................................. 21

1

<u>**TABLE OF AUTHORITIES**</u>

2

**Page(s)**

3

**Cases**

4

*Aldabe v. Aldabe*,
616 F.2d 1089 (9th Cir. 1980) ............................................................................... 6

5

6

*Am. Int'l Grp., Inc. v. Am. Int'l Bank*,
926 F.2d 829 (9th Cir. 1991) ............................................................................... 11

7

*AMF, Inc. v. Sleekcraft Boats*,
599 F.2d 341 (9th Cir. 1979) .................................................................. 10, 11, 13

8

9

*Autodesk, Inc. v. Flores*,
2011 WL 337836 (N.D. Cal. Jan. 31, 2011) ....................................................... 8

10

*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*,
174 F.3d 1036 (9th Cir. 1999) ...................................................................*passim*

11

12

*Cadence Design Sys., Inc. v. Avant! Corp.*,
125 F.3d 824 (9th Cir. 1997) ............................................................................... 18

13

*Century 21 Real Estate Corp. v. Sandlin*,
846 F.2d 1175 (9th Cir. 1988) ............................................................ 8, 10, 16, 18

14

15

*Champions Golf Club, Inc. v. Champions Golf Club, Inc.*,
78 F.3d 1111 (6th Cir. 1996) ............................................................................... 10

16

*China Cent. Television v. Create New Tech. (Hk) Ltd.*,
2016 WL 6871281 (C.D. Cal. Apr. 4, 2016) ....................................................... 7

17

18

*Craigslist, Inc. v. Naturemarket, Inc.*,
694 F. Supp. 2d 1039 (N.D. Cal. 2010) ............................................................. 20

19

*CytoSport, Inc. v. Vital Pharms., Inc.*,
617 F. Supp. 2d 1051 (E.D. Cal. 2009)........................................................ 17, 19

20

21

*Dish Network LLC v. New Era Elecs. Corp.*,
2013 WL 5486798 (C.D. Cal. Sept. 27, 2013) ................................................... 8

22

*Dorpan, S.L., v. Hotel Meliá, Inc.*,
728 F.3d 55 (1st Cir. 2013)................................................................................. 19

23

24

*eBay Inc. v. MercExchange, LLC*,
547 U.S. 388 (2006)............................................................................................. 7

25

*Eitel v. McCool*,
782 F.2d 1470 (9th Cir. 1986) ............................................................................. 6

26

27

*Entrepreneur Media, Inc. v. Entrepreneurs Opportunities LLC*,
2018 WL 4860036 (C.D. Cal. Jan. 4, 2018)................................................ 14, 15

28

iii

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011)................................................................. 6

*GoTo.com, Inc. v. Walt Disney Co.*,
202 F.3d 1199 (9th Cir. 2000) ........................................ 10, 11, 12, 13

*Gryphon Mobile Elecs., LLC v. Brookstone, Inc.*,
2016 WL 7637987 (C.D. Cal. July 12, 2016)............................ 7, 13, 18

*Iconix, Inc. v. Tokuda*,
457 F. Supp. 2d 969 (N.D. Cal. 2006) .................................... 7

*In re Tuli*,
172 F.3d 707 (9th Cir. 1999) ............................................... 5

*Juno Therapeutics, Inc. v. Juno Biomedical, Inc.*,
2018 WL 2021483 (N.D. Cal. Mar. 26), *report and
recommendation granted by* 2018 WL 1993407
(N.D. Cal. Apr. 27, 2018) .................................................... 20

*Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*,
150 F.3d 1042 (9th Cir. 1998) .............................................. 12

*Landstar Ranger, Inc. v. Parth Enters., Inc.*,
725 F. Supp. 2d 916 (C.D. Cal. 2010) ................................. 8, 15

*Moroccanoil, Inc. v. Allstate Beauty Prods., Inc.*,
847 F. Supp. 2d 1197 (C.D. Cal. 2012) ................................ 20

*Mountz, Inc. v. Ne. Indus. Bolting & Torque, LLC*,
2016 WL 6699295 (N.D. Cal. Sept. 30, 2016) ....................... 7

*Novel ID v. Hyman Prods., Inc.*,
1989 WL 418784 (C.D. Cal. Jan. 27, 1989) .......................... 9

*PepsiCo, Inc. v. Cal. Sec. Cans*,
238 F. Supp. 2d 1172 (C.D. Cal. 2002) .............................. 16

*Pom Wonderful LLC v. Hubbard*,
775 F.3d 1118 (9th Cir. 2014) ........................................... 12

*Reflex Media, Inc. v. Endeavor Standard SDN. BHD.*,
2019 WL 6792792 (C.D. Cal. Aug. 19, 2019)...................... 19, 20

*Rio Props., Inc. v. Rio Int'l, Interlink*,
284 F.3d 1007 (9th Cir. 2002) ........................................... 20

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
846 F. Supp. 2d 1063 (N.D. Cal. 2012) .............................. 19

*TeleVideo Sys., Inc. v. Heidenthal*,
826 F.2d 915 (9th Cir. 1987) .............................................. 7

*Wecosign, Inc. v. IFG Holdings, Inc.*,
845 F. Supp. 2d 1072 (C.D. Cal. 2012) .......................... 19, 20

iv

*Yelp Inc. v. Catron*,
70 F. Supp. 3d 1082 (N.D. Cal. 2014) ................................................................. 20

**Statutes and Rules**

15 U.S.C.
§ 1114 ................................................................................................................ *passim*
§ 1115(a) ................................................................................................................... 9
§ 1116(a) ............................................................................................................. 7, 16
§ 1117(a) ................................................................................................................. 20
§ 1121 ....................................................................................................................... 5
§ 1125(a) ................................................................................................... 5, 6, 8, 10

28 U.S.C.
§ 1331 ....................................................................................................................... 5
§ 1338(a) ................................................................................................................... 6

Fed. R. Civ. P.
55(a) ......................................................................................................................... 6
55(b) ......................................................................................................................... 6

**Other Authorities**

1 J. McCarthy, *Trademarks and Unfair Competition*
§ 16:1 (2d ed. 1984) ............................................................................................... 9

TO THE COURT, ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that before the Honorable James V. Selna, in the United States District Court for the Central District of California, Courtroom 10C, at 411 West Fourth Street, Santa Ana, California  92701, Plaintiff Nutrition & Fitness, Inc. ("NFI" or "Plaintiff") will, and hereby does, move the Court for a default judgment and permanent injunction against Defendant King Harvest California ("Defendant").  The Clerk of the Court has previously entered the default of Defendant on March 5, 2020, for failure to respond to NFI's Complaint within the time permitted by law.  (Dkt. No. 15.)

NFI is entitled to judgment against Defendant on each of the claims pleaded in its Complaint.  NFI requests that this Court enter a permanent injunction against Defendant restraining it from engaging in future violations of NFI's intellectual property rights.  Judgment is further sought for NFI's reasonable attorneys' fees plus costs incurred in an amount according to proof.

This Motion is based on this Notice of Motion; the Memorandum of Points and Authorities in support thereof; the supporting declarations of Joyce Liou ("Liou Decl."), Sabrina Larson ("Larson Decl."), and Greg Jones ("Jones Decl."), filed concurrently herewith; and the pleadings and files in this action.

Dated:       April 27, 2020

JENNIFER LEE TAYLOR
JOYCE LIOU
SABRINA A. LARSON
MORRISON & FOERSTER LLP

By:   /s/ *Joyce Liou*
         JOYCE LIOU

Attorneys for Plaintiff
NUTRITION & FITNESS, INC.

vi

## I.   INTRODUCTION

Plaintiff Nutrition & Fitness served Defendant with the complaint, summons, and other related documents through its registered agent for service of process on January 28, 2020.  Defendant King Harvest California neither appeared nor filed an answer, and has continued to willfully infringe NFI's Blue-Emu® mark despite being put on notice of NFI's claims.  A default judgment and permanent injunction against Defendant is necessary to protect NFI's trademark rights and to ensure no harm will result from potential consumer confusion over Defendant's unauthorized BLUE EMU products.  Accordingly, the Court should grant NFI's motion.

## II.   FACTUAL BACKGROUND

### A.   NFI and Its Trademarks

Founded in 1988, NFI is an innovative consumer products company that manufactures, markets, and distributes products under the trademark Blue-Emu® for muscle, joint, and skin conditions.  (Complaint ("Compl.") ¶ 6, Dkt. No. 1; Jones Decl. ¶ 2.)  Since its founding in 1988, NFI has grown exponentially, expanding significantly into the retail industry in 1998.  (Compl. ¶ 6; Jones Decl. ¶ 2.)  In 2002, NFI developed its original Blue-Emu® Super Strength cream, made with real emu oil, and it quickly became a best-selling product for the business.  (Compl. ¶ 7; Jones Decl. ¶ 3.)

In January 2014, Gregory Pharmaceutical Holdings, Inc. purchased NFI and quickly capitalized on the Blue-Emu® product line.  (Jones Decl. ¶ 4.)  In June 2014, Original Blue-Emu® Super Strength cream was recognized as the #1 selling over-the-counter muscle and joint cream in the United States.  (Compl. ¶ 8; Jones Decl. ¶ 4.)  Under the leadership of President and CEO Susan Gregory, NFI has expanded the Blue-Emu® product line to include Blue-Emu® Continuous Pain Relief Spray, Blue-Emu® Maximum Arthritis Pain Relief Cream, and Blue-Emu® Maximum Strength Lidocaine Numbing Pain Relief Cream.  (Compl. ¶ 9; Jones Decl. ¶ 5.)  NFI is the premier provider of emu oil-based topical products in the

1

United States.  (Compl. ¶ 10; Jones Decl. ¶ 6.)  NFI currently distributes its Blue-Emu® product line in over 35,000 retail outlets around the country, including at Walmart, CVS Pharmacy, and Walgreens, and through Amazon.  (Compl. ¶ 10; Jones Decl. ¶ 6.)  Since 2002, NFI has promoted its emu oil-based product line under its BLUE-EMU trademark.  (Compl. ¶ 11; Jones Decl. ¶ 8.)  NFI's strives to keep its Blue-Emu® products affordable.  (Jones Decl. ¶ 6.)  A twelve-ounce jar of the Original Blue-Emu® Super Strength cream retails for around $25-40.  (*Id.*)

NFI owns U.S. Registration No. 2,995,694 for the mark BLUE-EMU® for "[t]opical ointment containing emu oil for use in relieving joint or muscle pain," in International Class 5, which issued on September 13, 2005 (the "BLUE-EMU Mark").  (Compl. ¶ 12; Jones Decl. ¶ 9.)  The application to register the BLUE-EMU® mark as shown in Registration No. 2,995,694 was filed on May 3, 2002, and has a claimed first use and first use-in-commerce date of June 3, 2002.  (Compl. ¶ 12; Jones Decl. ¶ 9.)  NFI filed an affidavit under Section 15 of the Lanham Act on September 13, 2011, which was acknowledged by the United States Patent and Trademark Office.  (Compl. ¶ 12; Jones Decl. ¶ 9.)  As a result, the registration is incontestable and is considered to be conclusive evidence of the validity of the mark and registration, of NFI's ownership of the mark, and of NFI's exclusive right to use the BLUE-EMU Mark for the registered goods.  (Compl. ¶ 12; Jones Decl. ¶ 9.)

NFI uses the BLU-EMU Mark on its products and its product packaging.  (Compl. ¶ 11; Jones Decl. ¶ 10.)  Furthermore, NFI has consistently used the BLUE-EMU Mark in commerce on its website at www.blue-emu.com and with the media.  (Compl. ¶ 11; Jones Decl. ¶ 10.)  As a result of its promotional efforts and exceptional product quality, NFI has built up highly valuable goodwill in its BLUE-EMU Mark and said goodwill has become closely and uniquely identified with and associated with NFI.  (Compl. ¶ 11; Jones Decl. ¶ 11.)  Through its continuous use and promotion of its BLUE-EMU Mark, NFI has also acquired common law rights in

2

the BLUE-EMU Mark.

**B.     Defendant's Infringing Activity and Unfair Competition**

On information and belief, Defendant promotes and sells what it describes as cannabis oil medications that contain cannabidiol ("CBD") and/or tetrahydrocannabinol ("THC").  (Compl. ¶ 13; Jones Decl. ¶ 12.)  It claims that its products are useful in the treatment and prevention of a wide variety of diseases, including cancer, neurological conditions, inflammatory and autoimmune diseases, and others.  (Compl. ¶¶ 15-20; Jones Decl. ¶ 12.)  Its stated mission is "to furnish the California patient community with quality, lab-tested Cannabis Oil medicines, to offer no obligation education, and to raise awareness about the healing benefits of Cannabis Oil."  (Larson Decl. ¶ 10.)

Defendant markets and sells competing pain-relieving topical emu oil products under the nearly identical BLUE EMU mark.  (*Id.* ¶ 11.)  On information and belief, Defendant first began using the BLUE EMU mark in mid-2019. Defendant sells oils under the BLUE EMU mark on its website at https://kingharvest.org, with packaging and bottles that prominently feature the BLUE EMU mark.  (*Id.*)  According to its website, King Harvest sells its Blue Emu-branded roll-on for $45.  (Compl. ¶ 19; Jones Decl. ¶ 12.)  Defendant also advertises itself on Instagram and Facebook with photographs of products featuring the BLUE EMU mark.  (Larson Decl. ¶¶ 12-13.)  On information and belief, Defendant was aware of NFI's BLUE-EMU Mark when it chose to adopt the BLUE EMU mark, as NFI has been selling its Blue-Emu® products since 2002.  (Compl. ¶ 11; Jones Decl. ¶ 8.)

NFI's and Defendant's goods are closely related, as both parties sell pain-relieving topicals.  (Compl. ¶¶ 15-20; Jones Decl. ¶ 13.)  Furthermore, on information and belief, NFI and Defendant offer and promote their products in the same channels of trade, including, specifically, e-commerce.  (Compl. ¶ 10; Jones Decl. ¶ 6; Larson Decl. ¶ 11.)  Both parties also maintain websites explaining their

3

1  products, and, thus, use the Internet as a key marketing tool.  (Compl. ¶ 10; Jones

2  Decl. ¶ 10; Larson Decl. ¶ 11.)

3       In an effort to resolve its substantial concerns about Defendant's use of the

4  BLUE EMU mark, NFI sent a detailed letter dated August 6, 2019, to Defendant's

5  e-mail address listed under "Contact Us" on its website, demanding that Defendant

6  immediately cease all unauthorized use of the BLUE EMU mark.  (Larson Decl.

7  ¶ 15, Ex. M.)  NFI asked for a response by August 12, 2019.  (*Id.*)  Defendant did

8  not respond and did not stop using the BLUE EMU mark.  (*Id.* ¶ 15.)  On

9  September 3, 2019, NFI sent a follow-up letter, addressed to both Defendant's

10  address as listed on its website and to the address listed with the California

11  Secretary of State.  (*Id.* ¶ 16, Ex. N.)  NFI asked for a response by September 9,

12  2019.  (*Id.*)  Defendant did not respond and did not stop using the BLUE EMU

13  mark.  (*Id.* ¶ 16.)  On October 2, 2019, NFI sent another follow-up letter addressed

14  to Defendant at the same two addresses.  (*Id.* ¶ 17, Ex. O.)  NFI asked for a

15  response by October 4, 2019.  (*Id.*)  Defendant did not respond and did not stop

16  using the BLUE EMU mark.  (*Id.* ¶ 17.)  After NFI filed the Complaint in this

17  action, Defendant's owner, Lee Simpson, reached out to Joyce Liou, a partner at

18  Morrison & Foerster, on January 29, 2020, acknowledging his receipt of both the

19  Complaint and the October 2019 cease-and-desist letter from NFI.  (Liou Decl. ¶ 2.)

20  On March 11, 2020, an attorney emailed Ms. Liou, identifying himself as counsel

21  to Defendant—however, to date, Defendant has not appeared in this action.  (*Id*.

22  ¶ 3.)

23       Even after the above correspondence and filing of this lawsuit, Defendant

24  continues to use the BLUE EMU mark, which is likely to cause confusion, mistake,

25  or deception, now and in the future, as to the origin, source, and sponsorship of

26  Defendant's goods.  (Compl. ¶¶ 28-29, 38, 47; Jones Decl. ¶¶ 14-15.)  Specifically,

27  Defendant has continued to promote, sell, and ship products under the BLUE EMU

28  mark through its website.  (Larson Decl. ¶ 19.)  On March 13, 2020 an associate at

4

Morrison & Foerster purchased a topical moisturizer from Defendant's website at https://kingharvest.org/product/blue-emu-roll-on/, which was listed under the name "Green Emu – Roll On," but included an image of the product in BLUE EMU-branded packaging.  (*Id.*)  Defendant emailed an invoice confirming the purchase on March 13, 2020.  (*Id.*)  The invoice listed the product as "Blue Emu – Roll On Topical."  (*Id.*)  The product arrived on March 17, 2020 in a BLUE EMU-branded box that contained a BLUE EMU-branded bottle consistent with the image shown on Defendant's website.  (*Id.*)

### C.    Defendant's Decision Not to Participate in This Lawsuit

NFI filed the Complaint against Defendant initiating the present lawsuit on January 24, 2020.  (Compl.)  This Complaint alleged causes of action for trademark infringement under 15 U.S.C. § 1114 and false designation of origin under 15 U.S.C. § 1125(a)(1)(A).  (*Id.* ¶¶ 32-49.)  On January 28, 2020, NFI served Defendant with the complaint and summons, and other related documents, through its registered agent for service of process.  (Dkt. No. 9.)  NFI has also timely served all other filings and docket items on Defendant's registered agent for service of process.  (Larson Decl. ¶ 18.)  There is no question that Defendant is aware of the present lawsuit.  (Liou Decl. ¶ 2.)  Yet, as of the date of this Motion, Defendant has not appeared.  (*Id.* ¶ 3.)

NFI filed a Request to Clerk to Enter Default on March 4, 2020. (Dkt. No. 14.)  The Clerk entered default as to Defendant on March 5, 2020. (Dkt. No. 15.)

### III.    JURISDICTION

Before entering default judgment, a court has the affirmative duty to confirm that it has jurisdiction over the defendant.  *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).  Federal district courts have subject matter jurisdiction over civil cases arising under the Constitution, laws, or treaties of the United States, 28 U.S.C. § 1331; the Lanham Act, 15 U.S.C. § 1121; and any Act of Congress relating to

5

trademarks, 28 U.S.C. § 1338(a).  Here, NFI has alleged causes of action for trademark infringement under 15 U.S.C. § 1114 and false designation of origin under 15 U.S.C. § 1125(a)(1)(A).  (Compl. ¶¶ 32-49.)  This Court has subject matter jurisdiction over both causes of action under all three jurisdictional acts.  (*Id.* ¶ 3.)

Additionally, this Court has personal jurisdiction over a defendant corporation when that corporation is at home in the forum.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).  Defendant is domiciled in California, has an office in San Juan Capistrano, California, and actively directs its marketing, advertising, promotions, sales, and services at California residents.  (Larson Decl. ¶ 2.)  There is no question that Defendant is at home in the forum, and, thus, this Court has personal jurisdiction over Defendant.

## IV.   LEGAL STANDARD

Rule 55(a) of the Federal Rules of Civil Procedure states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  After entry of default under Rule 55(a), a federal district court may then enter a default judgment under Rule 55(b).  Fed. R. Civ. P. 55(b).  "The district court's decision whether to enter a default judgment is a discretionary one."  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In the Ninth Circuit, courts consider several factors in determining whether a default judgment is appropriate, including: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits."  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  When a court is considering these factors after a

defendant's default is entered by the court, the well-pled factual allegations of the complaint are taken as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

A party seeking permanent injunctive relief under 15 U.S.C. § 1116(a) must establish: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). The scope of a permanent injunction "must be narrowly tailored . . . to remedy only the specific harms shown by the plaintiff[], rather than to enjoin all possible breaches of the law." *China Cent. Television v. Create New Tech. (Hk) Ltd.*, 2016 WL 6871281, at *7 (C.D. Cal. Apr. 4, 2016) (quoting *Iconix, Inc. v. Tokuda*, 457 F. Supp. 2d 969, 998 (N.D. Cal. 2006)).

Courts routinely grant motions for default judgment and issue permanent injunctions in trademark infringement, unfair competition, and false designation of origin cases, such as this one. *See, e.g.*, *Mountz, Inc. v. Ne. Indus. Bolting & Torque, LLC*, 2016 WL 6699295, at *2, *10-11 (N.D. Cal. Sept. 30, 2016) (granting default judgment and enjoining use of tagline that shared similar elements with plaintiff's trademark); *Gryphon Mobile Elecs., LLC v. Brookstone, Inc.*, 2016 WL 7637987, at *3, *11 (C.D. Cal. July 12, 2016) (granting default judgment and enjoining use of ARMORALL mark that infringed plaintiff's POWERALL mark).

## V.   ARGUMENT

### A.   NFI Is Entitled to Default Judgment Under Federal Rule 55(b)(2)

Each of the *Eitel* factors weighs heavily in favor of granting default judgment and issuing a permanent injunction in this case.

#### 1.   NFI Will Be Prejudiced If Default Judgment Is Denied

The first *Eitel* factor is the possibility of prejudice to the plaintiff. Here, NFI

7

has no recourse against Defendant other than this lawsuit.  If default judgment is not entered, NFI will be unable to prevent Defendant and its employees, representatives, and agents from infringing NFI's trademark rights now and in the future.  This will unquestionably prejudice NFI, as it will be unable to stop the confusion between NFI and Defendant that is likely to occur as the parties continue to invest in and use the BLUE EMU mark in the same field.  Plaintiff "will be denied the right to adjudicate its claims and obtain relief if default judgment is not granted."  *Dish Network LLC v. New Era Elecs. Corp.*, 2013 WL 5486798, at \*4 (C.D. Cal. Sept. 27, 2013) (quoting *Autodesk, Inc. v. Flores*, 2011 WL 337836, at \*6 (N.D. Cal. Jan. 31, 2011)).  Because NFI will be significantly harmed if default judgment is denied, this factor strongly favors entry of a default judgment.

### 2.    The Sufficiency of the Complaint and the Merits of NFI's Claims Support Default Judgment

The second and third *Eitel* factors require examination of the sufficiency of the pleadings.  *See Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010).  NFI has sufficiently pled meritorious claims of federal trademark infringement, federal unfair competition, and false designation of origin under the Lanham Act.  The Complaint provides detailed factual allegations as to the elements of each cause of action, and these facts—which must be taken as true—demonstrate that NFI is likely to succeed on all of the claims.

To prevail on its claims under the Lanham Act, NFI must establish that it has prior valid and protectable marks, *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999), and that Defendant's use of its marks "is likely to cause confusion, or to cause mistake, or to deceive," 15 U.S.C. § 1114(1)(a)-(b).  The test for an unfair competition and false designation of origin claim under 15 U.S.C. § 1125(a)(1)(A) is exactly the same.  *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988).  As discussed below, NFI has prior valid rights in the BLUE-EMU Mark, and Defendant's use of the

8

BLUE EMU mark in connection with topical emu oil products is likely to cause confusion or mistake.

### a. NFI Has Prior, Valid Protectable Rights in the BLUE-EMU Mark

NFI owns a federal registration for the BLUE-EMU Mark for "[t]opical ointment containing emu oil for use in relieving joint or muscle pain" in International Class 5, which issued on September 13, 2005.  (Compl. ¶ 12; Jones Decl. ¶ 9, Ex. A.)  As such, NFI is presumed to own a valid and protectable trademark.  15 U.S.C. § 1115(a) (certificate of registration is prima facie evidence of validity, ownership, and "the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration").

Moreover, NFI has prior common law rights in the BLUE-EMU Mark.  It has been using the BLUE-EMU Mark in connection with its emu oil-based topical products since 2002 (Compl. ¶ 11; Jones Decl. ¶ 8), resulting in common law rights in the BLUE-EMU Mark since well prior to Defendant's adoption of the BLUE EMU mark for its topical emu oil products.  *See Novel ID v. Hyman Prods., Inc.*, 1989 WL 418784, at *2 (C.D. Cal. Jan. 27, 1989) ("Ownership of trademark rights in the United States is obtained by actual use of a symbol to identify the goods or services of one seller and distinguish them from those offered by others." (quoting 1 J. McCarthy, *Trademarks and Unfair Competition* § 16:1 (2d ed. 1984))).

Because these registered and common law rights all predate Defendant's first use of the BLUE EMU mark in mid-2019 in connection with emu oil topical products, NFI has priority in the BLUE-EMU Mark in connection with topical products.  *See Brookfield*, 174 F.3d at 1047.

1
2

### b. The *Sleekcraft* Factors Demonstrate a Likelihood of Confusion from Defendant's Use of the BLUE EMU Mark

3 The Ninth Circuit has developed a list of factors (the "*Sleekcraft* factors")

4 relevant to the determination of trademark infringement: (1) the strength of the

5 mark, (2) the proximity of the goods, (3) the similarity of the marks, (4) evidence of

6 actual confusion, (5) the marketing channels used, (6) the type of goods or services

7 and degree of care likely to be exercised by the purchaser, (7) defendant's intent in

8 selecting the mark, and (8) the likelihood of expansion of the product lines. *AMF,*

9 *Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). These factors are

10 not exhaustive, and other variables may come into play depending on the particular

11 facts presented. *Brookfield*, 174 F.3d at 1054. Neither intent nor actual confusion

12 is necessary to establish a likelihood of confusion. *Century 21*, 846 F.2d at 1178.

13 Importantly, likelihood of confusion as to sponsorship or affiliation, not just

14 source, constitutes trademark infringement. 15 U.S.C. §§ 1114, 1125(a); *see also*

15 *Champions Golf Club, Inc. v. Champions Golf Club, Inc.*, 78 F.3d 1111, 1121 (6th

16 Cir. 1996) (holding that a likelihood of confusion exists even if customers are

17 capable of differentiating between two golf clubs bearing the same name, if they

18 might believe those clubs are *affiliated* with one another). "The relevant question is

19 whether a golfer, albeit sophisticated, would likely be confused about [their]

20 affiliation . . . ." *Id.*

21 Because virtually all of the *Sleekcraft* factors weigh in NFI's favor, NFI is

22 likely to succeed in establishing a likelihood of confusion from Defendant's use of

23 the BLUE EMU mark.

24
25

### (i) NFI's BLUE-EMU Mark and Defendant's BLUE EMU Mark Are Nearly Identical

26 The similarity of the marks is perhaps the most important factor. *GoTo.com,*

27 *Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000). The Ninth Circuit

28 relies on three axioms when comparing the similarity of two marks: "first, the

10

marks must be considered in their entirety and as they appear in the marketplace; second, similarity is adjudged in terms of appearance, sound, and meaning; and third, similarities are weighed more heavily than differences." *Id.* at 1206.  Here, the marks used by the parties are nearly identical, the only difference being a hyphen between the words "blue" and "emu" in NFI's BLUE-EMU Mark.  As the marks are almost identical, consumers are likely to be confused between the two. "Together with the relatedness of the services and the use of a common marketing channel, this first factor constitutes part of the controlling troika in the *Sleekcraft* analysis." *Id.* at 1205.

### (ii)    NFI's and Defendant's Goods Are Competing

The second *Sleekcraft* factor focuses on whether the goods and services are "products which would be reasonably thought by the buying public to come from the same source if sold under the same mark." *Sleekcraft*, 599 F.2d at 348 n.10 (quotations and citation omitted).  A court may consider parties to be competitors if they sell goods in the same industry or if their goods are complementary.  *See Am. Int'l Grp., Inc. v. Am. Int'l Bank*, 926 F.2d 829, 832 (9th Cir. 1991) (stating that, "[a]lthough the parties are not direct competitors," their respective services "may be sufficiently 'complementary' or 'related' that the public is likely to be confused as to the source of the services").

Here, the parties appear to be direct competitors.  (Compl. ¶¶ 15-20; Jones Decl. ¶ 13.)  Both sell topical products containing emu oil for pain relief.  (Compl. ¶¶ 15-20; Jones Decl. ¶ 13.)  Because of this, the public is likely to be confused as to the source, sponsorship, or affiliation of Defendant's goods offered under the BLUE EMU mark.  (Compl. ¶¶ 28-29, 38, 47; Jones Decl. ¶¶ 14-15.)

### (iii)    NFI and Defendant Use the Same Marketing Channels

It is well established that "[c]onvergent marketing channels increase the likelihood of confusion." *Sleekcraft*, 599 F.2d at 353.  "In assessing marketing

11

1  channel convergence, courts consider whether the parties' customer bases overlap
2  and how the parties advertise and market their products." *Pom Wonderful LLC v.*
3  *Hubbard*, 775 F.3d 1118, 1130 (9th Cir. 2014).  Furthermore, "the Web, as a
4  marketing channel, is particularly susceptible to a likelihood of confusion since, . . .
5  it allows for competing marks to be encountered at the same time, on the same
6  screen." *GoTo.com*, 202 F.3d at 1207.

7          Both NFI and Defendant market their products to individuals with joint or
8  muscle pain.  (Compl. ¶ 7; Jones Decl. ¶ 2; Larson Decl. ¶ 11.)  Furthermore, both
9  parties maintain websites explaining their businesses and products.  (Compl. ¶ 10;
10  Jones Decl. ¶ 10; Larson Decl. ¶ 11.)  Thus, the parties' customer bases overlap, and
11  there is a high likelihood that their customers will encounter both marks when
12  browsing on the Internet.  (Compl. ¶¶ 28-29, 38, 47; Jones Decl. ¶¶ 14-15.)  This
13  factor also weighs strongly towards a likelihood of confusion.

14                    **(iv)    NFI's BLUE-EMU Mark Is Strong**

15          The strength of a mark is determined by weighing two aspects of mark
16  strength: (1) the inherent strength of the mark, and (2) strength of the mark in the
17  marketplace.  *GoTo.com*, 202 F.3d at 1207.  Marks can be conceptually classified
18  along a spectrum of generally increasing distinctiveness from descriptive to
19  suggestive to arbitrary to fanciful.  *Id.*  Upon seeing BLUE-EMU, consumers would
20  not immediately perceive the nature of the goods as pain-relieving topicals.  The
21  "BLUE" element, in particular, does not describe any intrinsic quality or
22  characteristic of the goods.  Therefore, BLUE-EMU is, at a minimum, suggestive of
23  emu oil-based topical pain-relief products because it requires some degree of
24  consumer imagination to connect the mark to the goods offered under the mark.
25  *See, e.g.*, *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042,
26  1047 n.8 (9th Cir. 1998) ("If a consumer must use imagination or any type of
27  multistage reasoning to understand the mark's significance, then the mark does not
28  *describe* the product's features, but *suggests* them.  Such a mark is therefore

                                        12

classified as 'suggestive' rather than 'descriptive.'"). Because suggestive marks are presumptively strong, the BLUE-EMU Mark should be afforded broad protection given its conceptual strength. *See Sleekcraft*, 599 F.2d at 349 ("A strong mark is inherently distinctive . . . .").

Furthermore, the BLUE-EMU Mark is commercially strong mark. In June 2014, Original Blue-Emu® Super Strength cream was recognized as the #1 selling emu oil based over-the-counter muscle and joint cream in the United States. (Compl. ¶ 8; Jones Decl. ¶ 4.) The Blue-Emu® product line is well known in the topical pain-relief category, and, thus, there is no question that Plaintiff's BLUE-EMU Mark is a commercially strong trademark.

### (v) Defendant Willfully Infringed the BLUE-EMU Mark

"[T]he failure of a party to defend itself against allegations of trademark infringement is indicative of willfulness." *Gryphon Mobile*, 2016 WL 7637987, at *5. While culpable intent is not required to find a likelihood of confusion, *see GoTo.com*, 202 F.3d at 1208, NFI alleged willful infringement in its Complaint, (Compl. ¶¶ 40, 49), and this allegation must be taken as true due to Defendant's default.

Moreover, Defendant's willful infringement is evidenced by Defendant's continuing promotion and sale of products under the BLUE EMU mark even after NFI filed this lawsuit. Despite its actual knowledge of NFI's claims from multiple cease-and-desist letters and the Complaint, Defendant continues to intentionally trade on the goodwill of NFI's BLUE-EMU mark and earn revenue from the sale of BLUE EMU-branded products on its website. (Larson Decl. ¶¶ 15-19.)

### (vi) Purchaser Care Will Not Avert Confusion

"Likelihood of confusion is determined on the basis of a 'reasonably prudent consumer.'" *Brookfield*, 174 F.3d at 1060 (citation omitted). When "dealing with inexpensive products, customers are likely to exercise less care, thus making

13

1    confusion more likely." *Id.*

2    Here, because NFI's Blue-Emu® products and Defendant's Blue Emu

3    products are inexpensive (Jones Decl. ¶ 13) consumers are not likely to exercise

4    great care in their purchases.  This factor indicates a high likelihood of consumer

5    confusion.

6                        **(vii)    Likelihood of Expansion Favors a Finding of**
                                    **Likely Confusion**
7

8    Because NFI already sells a similar product to that sold by Defendant under

9    the BLUE EMU mark, this last *Sleekcraft* factor weighs in favor of a finding of

10   likelihood of confusion.  *See Brookfield*, 174 F.3d at 1056 ("The use of similar

11   marks to offer similar products accordingly weighs heavily in favor of likelihood of

12   confusion.").

13   Analyzed together, the *Sleekcraft* factors indicate a likelihood of confusion

14   between the BLUE-EMU Mark and Defendant's BLUE EMU mark.  The three

15   most important factors—similarity of the marks, proximity of the goods and

16   services, and overlap in the respective marketing channels—all weigh heavily in

17   NFI's favor.  Furthermore, the BLUE-EMU Mark is strong, NFI has alleged and

18   demonstrated willful infringement, and purchaser care will not avert confusion.

19   Defendant's use of the BLUE EMU mark is, therefore, "likely to cause confusion,

20   or to cause mistake, or to deceive."  15 U.S.C. § 1114(1)(a)-(b).

21                  **3.    The Sum of Money at Stake Supports a Default Judgment**

22   NFI seeks only an injunction and attorneys' fees and costs, is not seeking any

23   damages from Defendant, which favors the entry of a default judgment.  *See*

24   *Entrepreneur Media, Inc. v. Entrepreneurs Opportunities LLC*, 2018 WL 4860036,

25   at *3 (C.D. Cal. Jan. 4, 2018) ("Here, EMI requests only a permanent injunction

26   and attorneys' fees and costs . . . . As there has been no request for monetary

27   compensation, the Court finds that the fourth <u>Eitel</u> factor favors default

28

14

judgment.").

### 4.    There Is No Real Dispute as to Any Material Facts in the Case

There is no real dispute that Defendant has adopted the BLUE EMU mark. (Compl. ¶¶ 13-20; Larson Decl. ¶¶ 11-14, Exs. F-L.)  Furthermore, there is no real dispute that NFI owns prior valid registrations for, and has prior common law rights in, the BLUE-EMU Mark.  (Compl. ¶ 12; Jones Decl. ¶ 9, Ex. A.)  "When a plaintiff pleads the facts that are necessary for him to prevail on his claims, a dispute over material facts is unlikely." *Entrepreneur Media*, 2018 WL 4860036, at *4 (citing *Philip Morris USA Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003)).

Defendant's decision not to participate in the litigation also indicates that there is no real dispute as to any material facts in the case.  *See Landstar Ranger*, 725 F. Supp. 2d at 922 ("Since Landstar has supported its claims with ample evidence, and defendant has made no attempt to challenge the accuracy of the allegations in the complaint, no factual disputes exist that preclude the entry of default judgment.").

### 5.    The Default Did Not Result from Excusable Neglect

When a plaintiff proffers evidence showing that the defendant was clearly aware of the litigation, yet, nevertheless, failed to appear and litigate the matter, the sixth *Eitel* factor favors entry of default judgment.  *Id.*  ("As authorized by the court, Landstar properly served Parth via personal service on the California Secretary of State.  Parth, however, failed to appear or defend. . . . Consequently, this factor too favors entry of default judgment.").  Here, NFI served the Complaint on Defendant on January 28, 2020.  (Dkt. No. 9.)  Defendant's owner himself acknowledged service.  (Liou Decl. ¶ 2.)  When a defendant has been properly served with an action, its default cannot be attributed to excusable neglect.  *See Landstar Ranger*, 725 F. Supp. 2d at 922.  Because Defendant was properly served

15

and had knowledge of this suit, it had an opportunity to timely appear and answer the Complaint. Defendant chose not to. Therefore, this factor weighs in favor of granting a default judgment.

**6.    The Strong Public Policy Favoring Decisions on the Merits Is Outweighed by the Impossibility of Such a Decision in this Case**

While default judgments are generally disfavored, the Ninth Circuit has found that this factor favors entry of default judgment when defendants have failed to appear or respond in a matter, as doing so makes a decision on the merits impractical or even impossible. *See, e.g.*, *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). In this case, Defendant chose not to respond to NFI's Complaint, even though NFI properly served Defendant. (Dkt. No. 9.) Since Defendant refused to properly participate in this litigation, a decision on the merits is impossible, and the seventh *Eitel* factor also favors entry of default judgment.

In summary, all seven *Eitel* factors favor an entry of default judgment. NFI's Complaint contains well-pled factual allegations that indicate success on the merits of all its claims, it will be prejudiced if default judgment is not entered, Defendant's default was not due to excusable neglect, there is no dispute concerning the material facts in this case, nor is any money at stake, and a decision on the merits is impossible.

**B.    NFI Is Entitled to Injunctive Relief**

This Court is authorized to grant injunctive relief for trademark infringement, unfair competition, and false designation of origin under 15 U.S.C. § 1116(a). "Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21*, 846 F.2d at 1180. Furthermore, courts routinely grant permanent injunctions in cases like this one, where a defendant has not appeared in the action at all. *See, e.g.*, *PepsiCo*, 238 F. Supp. 2d

16

1  at 1178.

2  ### 1.   NFI Has Suffered and Will Continue to Suffer Irreparable Harm Without Injunctive Relief

3

4  "In trademark cases, courts have found irreparable harm in the loss of control

5  of a business' reputation, a loss of trade[,] and loss of goodwill." *CytoSport, Inc. v.*

6  *Vital Pharms., Inc.*, 617 F. Supp. 2d 1051, 1080 (E.D. Cal. 2009).  "Trademarks

7  serve as the identity of their owners and in them resides the reputation and goodwill

8  of their owners. . . . [I]f another person infringes [a trademark], that person borrows

9  the owner's reputation, whose quality no longer lies within the owner's control.  A

10  trademark owner's loss of the ability to control its marks, thus, creates the potential

11  for damage to its reputation." *Id*. (citation omitted).

12  The harm suffered by NFI goes to the very heart and purpose of trademark

13  protection because its identity under the BLUE-EMU Mark is at risk.  Defendant's

14  nearly identical mark is likely to cause consumer confusion.  NFI cannot control its

15  identity if individuals believe the BLUE EMU-branded products offered by

16  Defendant are associated with or originate from NFI.  By itself, this lack of control

17  constitutes irreparable harm.

18  Additionally, the use of cannabis derivatives as medicinals, including CBD

19  and THC, is a controversial issue.  (Compl. ¶ 26; Jones Decl. ¶ 14.)  Although

20  many states have legalized cannabis, the manufacture, sale, and processing of

21  cannabis and cannabis-derivative products remains a violation of federal laws.

22  (Compl. ¶ 26; Jones Decl. ¶ 14.)  NFI's Blue-Emu® products do *not* contain CBD or

23  THC.  (Compl. ¶ 26; Jones Decl. ¶ 14.)  Defendant, on the other hand, is offering

24  topical ointments with the same intended purpose as NFI's—topical pain-relieving

25  ointments for muscles and joints—but they contain cannabis compounds.  (Compl.

26  ¶ 26; Jones Decl. ¶ 14.)  Defendant's use of the BLUE EMU mark to promote pain-

27  relieving topical ointments that are competing with and/or closely related to NFI's

28  topical ointments is likely to result in consumer confusion.  (Compl. ¶¶ 27-29, 38,

17

47; Jones Decl. ¶¶ 14-15.)  Further, Defendant's use of the BLUE EMU mark to promote products containing cannabis derivatives is likely to lead consumers to believe that NFI is using cannabis derivatives in its emu oil-based products, when it is not.  (Compl. ¶ 26; Jones Decl. ¶ 14.)

As stated above, injunctions are considered the remedy of choice in trademark cases such as this one, as there is no other adequate remedy at law.  *See Century 21*, 846 F.2d at 1180; *see also Gryphon Mobile*, 2016 WL 7637987, at *10 ("'Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement.'  Absent permanent injunctive relief, Plaintiffs will be forced to repeatedly file suit any time Defendant infringes their patent and trademark." (quoting *Century 21*, 846 F.2d at 1180)).  Unless this Court issues a permanent injunction, Defendant will continue to use the BLUE EMU mark as it has done so since the filing of the lawsuit, and NFI will continue to suffer irreparable injury.  Monetary damages are inadequate, as they cannot compensate NFI for the loss of control over its identity and damage to its reputation.

### 2.    The Balance of Hardships Weighs Decidedly in NFI's Favor

The irreparable harm that NFI will suffer if Defendant is permitted to continue its use of a mark that is confusingly similar to the BLUE-EMU Mark weighs in favor of granting the injunction when compared with the potential damage to Defendant.  *See Cadence Design Sys., Inc. v. Avant! Corp.*, 125 F.3d 824, 830 (9th Cir. 1997) (holding that it was reversible error for the district court to consider that an injunction would be devastating to defendants' business).  Significantly, the requested injunction does not preclude Defendant from engaging in its normal business activities, including manufacturing, promoting, and selling a competing product.  Rather, the injunction only asks that Defendant refrain from using BLUE EMU or a similarly confusing mark in connection with pain-relieving topicals, including ones that contain cannabis compounds.  Such use, if unabated,

18

1  will harm NFI's reputation and cause NFI to lose valuable goodwill in the BLUE-

2  EMU Mark.  *See CytoSport*, 617 F. Supp. 2d at 1081; *Wecosign, Inc. v. IFG*

3  *Holdings, Inc.*, 845 F. Supp. 2d 1072, 1084 (C.D. Cal. 2012) ("Furthermore, the

4  balance of hardships favors Plaintiff because without an injunction, Plaintiff will

5  lose profits and goodwill, while an injunction will only proscribe Defendants'

6  infringing activities.").

7      Furthermore, not only must the Court accept as true that Defendant knew of

8  NFI's prior rights in the BLUE-EMU Mark when it chose to adopt the BLUE EMU

9  mark (Compl. ¶¶ 36, 45), but Defendant has also demonstrated its intent to continue

10  profiting from NFI's BLUE-EMU Mark subsequent to the filing of this lawsuit.

11  (Larson Decl. ¶ 19.)  The balance of equities favors a plaintiff when a defendant

12  "knowingly use[s]" a confusingly similar mark "after learning of [p]laintiffs' prior

13  use," such as the case here.  *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 846 F.

14  Supp. 2d 1063, 1084 (N.D. Cal. 2012).

15  ### 3. An Injunction Serves the Public Interest

16      "In the trademark context, courts often define the public interest at stake as

17  the right of the public not to be deceived or confused."  *CytoSport*, 617 F. Supp. 2d

18  at 1081; *see also Reflex Media, Inc. v. Endeavor Standard SDN. BHD.*, 2019 WL

19  6792792, at *4 (C.D. Cal. Aug. 19, 2019) ("the public interest is served when

20  trademark holders' rights are protected against infringement").  Defendant's use of

21  the BLUE EMU mark will deprive the public of the ability to distinguish between

22  Defendant's pain-relief topicals that contain cannabis compounds, on the one hand,

23  from NFI's pain-relief topicals that do not contain cannabis compounds, on the

24  other.  This distinction is no doubt important to some customers, and the fact that a

25  product includes cannabis derivatives may have a significant influence on a

26  consumer's purchasing decision.  Because prevention of confusion is "the

27  touchstone of trademark protection," *Dorpan, S.L., v. Hotel Meliá, Inc.*, 728 F.3d

28  55, 61 (1st Cir. 2013), the public has a right to not be misled into thinking that

19

Defendant's BLUE EMU-branded, cannabis-derived products are associated with or originate from NFI, when no such relation exists.

Accordingly, NFI is entitled to a permanent injunction to prevent further irreparable harm to its identity and reputation.

### C.   **NFI Is Entitled to Attorneys' Fees and Costs**

The Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). "The Ninth Circuit has recognized that, [w]hile the term 'exceptional' is not defined in the statute, attorneys' fees are available in infringement cases where the acts of infringement can be characterized as malicious, fraudulent, deliberate, or willful." *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1065 (N.D. Cal. 2010) (quoting *Rio Props., Inc. v. Rio Int'l, Interlink*, 284 F.3d 1007, 1023 (9th Cir. 2002)) (internal quotations omitted). "An allegation of willful trademark infringement is deemed true on default." *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1101 (N.D. Cal. 2014) (citing *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008)). Moreover, "[a] defendant's failure to defend is one factor that courts consider in determining whether the defendant's conduct was willful." *Moroccanoil, Inc. v. Allstate Beauty Prods., Inc.*, 847 F. Supp. 2d 1197, 1204 (C.D. Cal. 2012). Courts in this district routinely award attorneys' fees and costs in cases where a defendant defaults. *See, e.g.*, *Wecosign*, 845 F. Supp. 2d at 1086 (awarding $222,946 in attorneys' fees); *Reflex Media*, 2019 WL 6792792, at *5 (awarding attorneys' fees and costs after granting default judgment in trademark litigation); *Moroccanoil*, 847 F. Supp. 2d at 1205; *see also Juno Therapeutics, Inc. v. Juno Biomedical, Inc.*, 2018 WL 2021483 (N.D. Cal. Mar. 26), *report and recommendation granted by* 2018 WL 1993407 (N.D. Cal. Apr. 27, 2018) (same).

This case qualifies as an exceptional case. NFI has prevailed in this action, but only after substantial and unnecessary expense. NFI had no option but to file an action seeking injunctive relief for Defendant's use of the BLUE EMU mark, after

20

1   waiting months for Defendant to respond to NFI's cease-and-desist letters.  Even

2   after NFI filed suit, Defendant failed to timely respond to the Complaint, and

3   continued to infringe NFI's rights through ongoing sales of BLUE EMU-branded

4   products.  Defendant's choice of default while Defendant deliberately disregarded

5   NFI's rights warrants an exceptional award.  Therefore, NFI requests that the Court

6   award its reasonable attorneys' fees and costs, and accounting of which will be

7   submitted at a later date.

8   **VI.    CONCLUSION**

9        For the foregoing reasons, and in accordance with Rule 55(b)(2) of the

10  Federal Rules of Civil Procedure, plaintiff NFI respectfully requests the Court enter

11  default judgment against Defendant; issue a permanent injunction against

12  Defendant restraining it from using BLUE EMU or any other trademark, name, or

13  domain name including the name BLUE EMU for goods or services related to

14  pain-relief topicals; and award reasonable attorneys' fees and costs to NFI.

16  Dated:     April 27, 2020              JENNIFER LEE TAYLOR
                                           JOYCE LIOU
17                                         SABRINA A. LARSON
                                           MORRISON & FOERSTER LLP

19                                         By:  ___/s/ *Joyce Liou*_____
20                                              JOYCE LIOU

21                                              Attorneys for Plaintiff
                                                NUTRITION & FITNESS, INC.

21